IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| DANILLIE THOMAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO.: 3:14cv894-WC |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

# MEMORANDUM OPINION

## I.    INTRODUCTION

Danillie Thomas ("Plaintiff") filed an application for disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401, *et seq*, on September 4, 2012.  Her application was denied at the initial administrative level. Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ").  Following the hearing, the ALJ issued a decision finding Plaintiff not disabled from the alleged onset date of March 29, 2011, through the date of the decision.  Plaintiff appealed to the Appeals Council, which rejected her request for review of the ALJ's decision.   The  ALJ's  decision  consequently  became  the  final  decision  of  the Commissioner of Social Security ("Commissioner").[1]  *See Chester v. Bowen*, 792 F.2d

---

[1]    Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub. L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

129, 131 (11th Cir. 1986).  The case is now before the court for review under 42 U.S.C. §

405(g).  Pursuant to 28 U.S.C. § 636(c), both parties have consented to the conduct of all

proceedings and entry of a final judgment by the undersigned United States Magistrate

Judge.  Pl.'s Consent to Jurisdiction (Doc. 10); Def.'s Consent to Jurisdiction (Doc. 11).

Based on the court's review of the record and the briefs of the parties, the court

AFFIRMS the decision of the Commissioner.

## II.    STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to benefits when the person is

unable to

> engage in any substantial gainful activity by reason of any medically
> determinable physical or mental impairment which can be expected to
> result in death or which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[2]

To make this determination, the Commissioner employs a five-step, sequential

evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2011).

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific
> impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 [the Listing of
> Impairments]?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?

---

[2]    A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The burden of proof rests on a claimant through Step Four.  *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004).  A claimant establishes a *prima facie* case of qualifying disability once they have carried the burden of proof from Step One through Step Four.  At Step Five, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform.  *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC").  *Id*. at 1238-39.  The RFC is what the claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence.  *Id*.  It may contain both exertional and nonexertional limitations.  *Id*. at 1242-43.  At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform.  *Id*. at 1239.  To do this, the ALJ can either use the Medical

---

[3]   *McDaniel* is a supplemental security income (SSI) case.  The same sequence applies to disability insurance benefits.  Supplemental security income cases arising under Title XVI of the Social Security Act are appropriately cited as authority in Title II cases.  *See, e.g.*, *Ware v. Schweiker*, 651 F.2d 408, 412 (5th Cir. 1981); *Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 876 n.* (11th Cir. 2012) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income.").

Vocational Guidelines[4] ("grids") or call a vocational expert ("VE").  *Id.* at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience.  Each factor can independently limit the number of jobs realistically available to an individual.  *Phillips*, 357 F.3d at 1240.  Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled."  *Id*.

The court's review of the Commissioner's decision is a limited one.  This court must find the Commissioner's decision conclusive if it is supported by substantial evidence.  42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence.").  A reviewing court may not look only to those parts of the record which support the decision of the ALJ, but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ.  *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

[The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings.  . . .  No

---

[4]  *See* 20 C.F.R. pt. 404 subpt. P, app. 2.

> similar presumption of validity attaches to the [Commissioner's] . . . legal
> conclusions, including determination of the proper standards to be applied
> in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

## III.   ADMINISTRATIVE PROCEEDINGS

Plaintiff was forty-eight years old at the time of the hearing before the ALJ, and had completed some college coursework while serving in the military. Tr. 51. Following the administrative hearing, and employing the five-step process, the ALJ found at Step One that Plaintiff "has not engaged in substantial gainful activity since March 29, 2011, the alleged onset date[.]" Tr. 27. At Step Two, the ALJ found that Plaintiff suffers from the following severe impairments: "minimal osteoarthritis of the hips, lumbar degenerative disc disease and spondylosis, carpal tunnel syndrome of the right wrist, headaches, depressive disorder, and post-traumatic stress disorder (PTSD)[.]" Tr. 27.[5] At Step Three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments[.]" Tr. 30. Next, the ALJ articulated Plaintiff's RFC as follows:

> [T]he claimant has the residual functional capacity to perform light work as
> defined in 20 CFR 404.1567(b), except she cannot do jobs that require her
> to climb ladders, ropes, or scaffolding. She can frequently reach overhead
> with her right upper extremity. The claimant can occasionally climb ramps
> or stairs, balance, stoop, kneel, crouch, or crawl. She is capable of
> performing simple, routine, repetitive tasks, and can concentrate and persist
> for two-hour segments. Work must be limited to occasional changes in the

---

[5]  The ALJ also found that Plaintiff suffers from the non-severe impairments of "epicondylitis of the right elbow, reflux disease, hypertension, and obesity." Tr. 27.

work setting, and occasional interaction with the public and co-workers.
She is unable to meet fast-paced, high production demands.

Tr. 32.  Having consulted with a VE at the hearing, the ALJ concluded at Step Four that

Plaintiff is "unable to perform any past relevant work[.]"  Tr. 33.  Finally, at Step Five,

and based upon the testimony of the VE, the ALJ determined that "[c]onsidering the

claimant's age, education, work experience, and residual functional capacity, there are

jobs that exist in significant numbers in the national economy that the claimant can

perform."  Tr. 34.  The ALJ identified several representative occupations, including

"marker," "garment sorter," and "warehouse checker."  *Id.*  Accordingly, the ALJ

determined that Plaintiff "has not been under a disability . . . from March 29, 2011,

through the date of this decision[.]"  Tr. 34.

## IV.  PLAINTIFF'S CLAIMS

Plaintiff presents three issues for the court to consider in its review of the

Commissioner's decision.  She argues that the "ALJ's residual functional capacity

finding was not based on the medical record," that the ALJ "erred in his evaluation of

Treating Psychotherapist . . . opinion," and that the ALJ "erred in his credibility finding."

Pl.'s Br. (Doc. 13) at 6-14.

## V.  DISCUSSION

### A.  The ALJ's RFC Finding.

Plaintiff first argues that the ALJ "did not basis [sic] his exertional . . . or his

nonexertional RFC findings . . . on the medical record."  Pl.'s Br. (Doc. 13) at 6.  She

asserts that the ALJ's RFC is not supported by a "sufficient summary of the medical evidence" and is, instead, "a conclusory, categorical RFC assessment or a broad statement." *Id.* at 6-7 (internal quotation and citation omitted). As to the ALJ's exertional RFC findings, Plaintiff concedes that, in support of his finding, the ALJ cites "a string of discrete negative examination findings and treatment note citations[,]" but that the "ALJ's discrete citations to the record are not representative of the record as a whole." *Id.* at 7. She maintains that because other evidence in the record conflicts with the evidence relied upon by the ALJ, the ALJ's exertional RFC finding "was not based on evidence presented[,] and as such [is] not supported by substantial evidence." *Id.* at 9.

Prior to rendering his RFC findings, the ALJ carefully surveyed the medical evidence in the record, including evidence dating around and succeeding Plaintiff's alleged disability onset date. For example, the ALJ noted the general success in pain relief and management achieved by the implantation of a spinal cord stimulator in late 2010. The ALJ discussed the February, 2011, observation of Plaintiff's treating physician, Dr. Dawson, that "the stimulator had reduced the claimant's leg and back pain so much she was able to begin a walking program for exercise and weight loss." Tr. 28. *See also* Tr. 512 ("Her symptoms are stable since last visit. The stimulator is reduce her pain back and leg pains. . . . She walks for exercises."). The ALJ further noted Dr. Dawson's follow-up observation, in April of 2011, that the stimulator is "doing good" in reducing Plaintiff's pain to "mild in severity," and that Plaintiff was still walking for

exercise and had joined a gym.  Tr. 28; Tr. 514.  The record continues to bear out the ALJ's observation about the success of the spinal cord stimulator.  *See* Tr. 516 (July 1, 2011, treatment note observing "stimulator continues to reduce her lumbar and leg pains," leaving only "mild in severity" lumbar pain); 518 (August 29, 2011, treatment note indicating "stimulator continues to reduce her lumbar pain and leg pains," leaving her ongoing lumbar pain which is "mild in severity"); 520 (October 26, 2011, treatment note indicating that "stimulator continues to reduce her lumbar pain and leg pains," and that, since it was reprogrammed after her last visit, it has "helped a lot"); and 524 (March 28, 2012, treatment note indicating Plaintiff's "symptoms are improved since last visit," that she still suffers lumbar pain which is "mild in severity," and that Plaintiff "has adequate relief of her neuropathic pain from her DCS").

The ALJ also canvassed other evidence in the record, including the consultative examination performed by Dr. Johnston.  Tr. 29.  In pertinent part, the ALJ noted that "Dr. Johnston found moderately limited range of motion in the spine, with reported pain and stiffness," but that her "[s]trength was normal in all extremities," and "[s]traight leg raise test was normal, as were reflexes, sensation, and fine or gross manipulation."  Tr. 29.  Ultimately, the ALJ noted, "[n]o functional limitations or restrictions were recommended by Dr. Johnston."  *Id.*; *see* Tr. 767-68.

In addition to evidence from Plaintiff's treating physician and the consultative examiner, the ALJ noted Plaintiff's testimony that she can bathe without assistance,

performs ordinary housework, regularly climbs the stairs in her home, travels out-of-town to visit her son in college, and goes out to movies, restaurants, and church.  Tr. 30. Summarizing all of this evidence, in formulating Plaintiff's RFC, the ALJ found as follows:

> Overall, the trend of the evidence shows improvement in low back pain, particularly after the SCS implementation.  In February 2013, the claimant reported about 60 to 70 percent pain relief with medications, and she was reportedly getting ". . . adequate pain relief . . ." from use of the stimulator. Examination by Dr. Johnston in July 2013 showed normal leg strength, normal reflexes, negative straight leg raise test, and no sensory or motor deficits.  Dr. Dawson noted subjective improvement in symptoms in August 2013.  . . .  She testified she can walk the stairs in her home, drive to errands and shopping, and go out to movies and restaurants.

Tr. 33 (citations omitted).

Plaintiff disagrees with the ALJ, arguing that, merely because her treating physician characterized her pain relief as "adequate," it does not follow that she "was pain free or doing well enough on a daily basis to obtain, perform or sustain competitive work activity."  Pl.'s Br. (Doc. 13) at 8.  Plaintiff points to Dr. Dawson's treatment notes reflecting her reports that she has "good and bad days," that she continued to suffer lumbar pain even after insertion of the spinal cord stimulator, and that, while she sometimes reported 60-70% pain relief to Dr. Dawson, other times she reported only 30-40% pain relief.  She maintains that, on the whole, "Dr. Dawson's records show that examination findings were inconsistent with an ability to perform light-exertional work competitively" because "[t]hroughout 2012 and 2013 examinations, Dr. Dawson

regularly noted decreased and painful lumbar spine range of motion, paraspinous musculature was tender to palpation, positive bilateral straight leg raises, and an antalgic gait." *Id.*

In essence, Plaintiff appears to be arguing that, while the ALJ found and cited to some evidence lending support to his RFC findings, more evidence in the record preponderates against the ALJ's findings. Of course, such an argument does not reflect a proper application of the substantial evidence standard. The ALJ's decision can enjoy the support of substantial evidence even if more evidence in the record would support a more restricted RFC finding. *See Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) ("If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it."). Nor, to the extent Plaintiff is indeed arguing such, is it material to the substantial evidence inquiry that, despite Dr. Dawson's treatment notes indicating some success in limiting and treating Plaintiff's pain, Dr. Dawson did not conclude that she was "pain free." Pl.'s Br. (Doc. 13) at 7. *See, e.g., Brown v. Bowen*, 801 F.2d 361, 362-63 (10th Cir. 1986) (remarking that "disability requires more than mere inability to work without pain").

Plaintiff points to no opinion evidence in the record indicating that she is more restricted in her exertional abilities than that found by the ALJ. Instead, like the ALJ, she isolates discrete portions of the record which, she argues, support her position that she is disabled and argues that, in this instance, more of the record supports her argument than

it does the ALJ's findings.   And, indeed, there is evidence supporting her position. However, given the numerous instances in the record documenting the generally successful treatment and abatement of Plaintiff's pain (*see, e.g.*, Tr. 514, 516, 520, 524, 526, 528, 530, 533, 534), as well as the largely unremarkable observations of the consultative examiner (Tr. 767-68), and the ALJ's discussion of Plaintiff's daily living activities and capacities, the court does not agree that the evidence on the whole is "inconsistent with an ability to perform light-exertional work competitively," Pl.'s Br. (Doc. 13) at 8, and therefore cannot find that the ALJ's RFC finding as to Plaintiff's exertional abilities is not supported by substantial evidence in the record.

Plaintiff also argues that the ALJ's RFC findings respecting Plaintiff's non-exertional limitations are not supported by substantial evidence.   Plaintiff claims the ALJ did not sufficiently explain the evidentiary basis for his findings with respect to Plaintiff's non-exertional limitations, and that the ALJ "mischaracterized the record arguing that Ms. Thomas' PTSD and Depression were not severe enough to result in more significant limitations."  Pl.'s Br. (Doc. 13) at 9.

The ALJ reviewed evidence in the record concerning Plaintiff's mental health. The ALJ noted that Plaintiff has received treatment for "alleged depressive disorder and PTSD."   Tr.   29.   He noted that a PHQ-2 test in July 2013 showed "'moderate' depression," that a September 2013 assessment indicated that with her medication Plaintiff finds some relief from her symptoms on good days, but that she also experiences

bad days and low energy days.  Tr. 29.  The ALJ also noted a November 2013 PHQ-2 screening which was negative for depression.  Tr. 29 (citing Tr. 1049).  Based upon this evidence, and Plaintiff's testimony at the hearing, the ALJ found Plaintiff's depression and PTSD to be severe impairments.  Tr. 27.  Specifically, the ALJ found that Plaintiff has moderate difficulties in social functioning due to her PTSD and depression, and that she has moderate difficulties with regard to her concentration, persistence, and pace due to "symptoms of depression that include difficulty maintaining concentration."  Tr. 31. As a result of these impairments, the ALJ found as follows: "She is capable of performing simple, routine, repetitive tasks, and can concentrate and persist for two-hour segments.  Work must be limited to occasional changes in the work setting, and occasional interaction with the public and co-workers.  She is unable to meet fast-paced, high production demands."  Tr. 32.  In support, the ALJ referred to records showing that Plaintiff "has responded well to individual and group therapy."  Tr. 33.  The ALJ also cited, again, the negative depression screening in November, 2013, as well as the fact that Plaintiff has not received any in-patient psychiatric treatment.  Tr. 33.

Plaintiff argues that the ALJ's decision is not supported by substantial evidence, and, furthermore, that the ALJ mischaracterized the record in rendering his RFC findings. In support, she contends "the ALJ ignored the positive clinical findings, as record[ed] by the VA's treating psychological sources.  Treating psychiatrists' findings indicated[] Ms. Thomas' affect and mood were 'up and down' and depressed; insight and judgment-

'fair'; and thoughts 'intrusive.'  Treating psychologist (Michael D. Marti, PsyD) usually noted Ms. Thomas' flat affect and mood."  Pl.'s Br. (Doc. 13) at 9 (citations omitted).

It cannot be fairly argued that the ALJ "ignored positive clinical findings" or the observations of Dr. Marti.  As set forth above, the ALJ plainly recognized both the positive diagnoses of depression and PTSD in the record and, specifically, Dr. Marti's note indicating that Plaintiff's PHQ-9 score in July of 2013 was in the moderate depression range.  *See* Tr. 29 (citing Tr. 810).  Plaintiff only points to other instances in the record reflecting findings—such as her "up and down" mood and flat affect—that were already recognized by the ALJ.  Apart from the opinion of her counselor, the ALJ's treatment of which will be separately discussed below, Plaintiff points to no evidence in the record, whether opinion or otherwise, which indicates that her depression and PTSD cause functional limitations greater than those articulated by the ALJ.  Accordingly, the court does not find that the ALJ's non-exertional RFC findings are not supported by substantial evidence in the record.

**B.      The ALJ's treatment of Plaintiff's Treating Psychotherapist's Opinion.**

Plaintiff next argues that the ALJ failed to mention or appropriately apply the factors relevant to the Commissioner's consideration of her treating psychotherapist, a non-medical source.  Pl.'s Br. (Doc. 13) at 11 (citing SSR 06-03p).  Plaintiff testified that she began seeing her psychotherapist, Quinn Wulff, every thirty days starting in 2009.  Tr. 71.  In January of 2013, Ms. Wulff wrote a letter outlining her history of counseling

13

Plaintiff, discussing Plaintiff's reporting about her symptoms and Ms. Wulff's diagnoses of Plaintiff's mental impairments,  and opining about Plaintiff's "occupational and social impairments[.]"  Tr. 827.  In particular, Ms. Wulff stated that, "[d]ue to her declining health and mental health symptoms, it is highly unlikely that Ms. Thomas will be able to continue sustaining any form of employment, as her condition will probably last the remainder of her life.  As these symptoms and health problems increase, it is most likely that Ms. Thomas will continue to have problems on any job that will directly interfere with her performance."  Tr. 827.  Later, in September of 2013, Ms. Wulff, who apparently obtained a Doctorate in the interim, completed a "Medical Source Statement (Mental)" in which she opined that Plaintiff has extreme or marked impairments in several areas of mental functioning in an occupational setting and that Plaintiff would be expected to miss more than four days of work per month due to her impairments.  Tr. 824-25.

The ALJ rejected Ms. Wulff's opinion, giving it no weight "because [s]he is not an acceptable source.  Furthermore, [her] opinions are not based on [her] independent judgment, but upon the claimant's input."  Tr. 34.

Plaintiff contends that the ALJ should have afforded Ms. Wulff's opinion significant weight considering the lengthy counseling relationship between Ms. Wulff and Plaintiff.  Pl.'s Br. (Doc. 13) at 11.  Plaintiff appears to argue that, as when an ALJ rejects the opinion of an acceptable medical treating source, the ALJ should have

articulated "good cause" for his rejection of Ms. Wulff's opinion rather than substituting "his own 'medical opinion' for that of a Treating Psychological Source Opinion." *Id.* at 12.

To the extent Plaintiff is indeed arguing that the ALJ should have articulated "good cause" for his rejection of Ms. Wulff's opinion, Plaintiff is incorrect. A mental health counselor such as Mrs. Wulff is not an acceptable medical source, *see* 20 C.F.R. § 404.1513(a)(1)-(5), and, therefore, cannot suffice as a treating physician whose opinion is entitled to great weight in the absence of good cause. Instead, Ms. Wulff's opinion is that of an "other" source, and cannot, alone, establish the existence of disability. *See* SSR 06-03p ("only 'acceptable medical sources' can give us medical opinions"). Such evidence may be used, however, "to show the severity" of Plaintiff's medically determinable impairments. 20 C.F.R. § 416.913(d). In this case, the ALJ correctly observed that Ms. Wulff's opinion appears conclusory and is based, entirely, upon Plaintiff's subjective complaints. There are no treatment notes in the record reflecting Ms. Wulff's independent observations and conclusions about Plaintiff's mental health and functioning. Rather, apart from Ms. Wulff's letter and the "Medical Source Statement (Mental)" she completed, the only records from Landmark Counseling, the entity through which Plaintiff was seeing Ms. Wulff, consist of a series of one-page forms in which Plaintiff is asked to describe her mood, attitude, and behavior since her last session, identify which emotions she has experienced since her last session, describe significant

events since her last session, and describe any "improvements" since her last session. *See* Tr. 1014-1042. A review of these records indicates that Plaintiff almost always reported that she was in a "good" mood since her last session and that she regularly experienced a host of positive emotions between her sessions. *Id.* In other words, the only available records from Landmark Counseling depict someone in a mostly "good" mood who experiences the ordinary fluctuations of positive and negative emotions which are attendant to everyday life for most people. And, as the ALJ recognized, to the extent these records could be argued as somehow supportive of Ms. Wulff's opinion, they are based entirely on Plaintiff's subjective reporting, not the independent observation of Ms. Wulff. *See* Tr. 74 (ALJ: "okay, you helped her fill it out or she asked you questions about that?" A: "She asked me questions sir.").

The ALJ's rejection of Ms. Wulff's opinion is not contrary to SSR 06-03p. First, SSR 06-03p describes one of the factors relevant to the analysis of non-acceptable medical source opinions as "[t]he degree to which the source presents relevant evidence to support an opinion." Here, Ms. Wulff provides no treatment note or other evidence in support of her opinion. As such, the ALJ's rejection of Ms. Wulff's opinion because, in part, it is based only upon the "claimant's input" rather than Ms. Wulff's "independent judgment" is consistent with at least one of the factors ALJ's are advised to consider when reviewing non-accepted medical source opinions. More importantly, however, SSR 06-03p simply directs that the ALJ "generally should explain the weight given to

16

opinions from  . . . 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning[.]"   Here, the ALJ's reasoning is easily followed: the ALJ rejected Ms. Wulff's opinion because the source did not present "relevant evidence" to support her opinion and instead relied on the self-reporting of a claimant whom the ALJ found to be less than fully credible, and the record otherwise lacked evidence supporting the numerous marked and severe limitations Ms. Wulff described.   Tr. 33.   Upon the court's review, the court finds nothing in the record from Landmark Counseling, or in the larger record as a whole, consistent with the numerous marked or extreme limitations in mental functioning which Ms. Wulff, a non-acceptable medical source, attributed to Plaintiff.   As such, the ALJ's decision to discredit Ms. Wulff's opinion is supported by substantial evidence in the record.

### C.   The ALJ's credibility finding.

Plaintiff's final claim is that the "specific reasons" articulated by the ALJ for finding Plaintiff less than fully credible "did not accurately reflect the record, and therefore did not support his credibility finding."   Pl.'s Br. (Doc. 13) at 13.   She maintains that the ALJ "never offered a meaningful credibility analysis" because the ALJ erroneously characterized the objective medical record as not supportive of Plaintiff's subjective complaints, "ignored positive objective clinical and radiological findings," and

failed to properly assess Plaintiff's "treatment history" in "assessing her credibility." *Id.* at 13-14.

Plaintiff testified that she can bathe and dress herself, but that she has to sit down to put on her shoes and socks because her balance is lacking. Tr. 57-58. She does housework like laundry and sweeping and loading and unloading the dishwasher. Tr. 59-60. She is able to climb the stairs in her home. Tr. 60. She leaves her home to visit her son at college, visit friends in the neighborhood, go to Fort Benning, go out to eat at restaurants, go to movies, go shopping, and walk in her neighborhood for exercise. Tr. 59-63. She estimated she could lift and carry "maybe 20 pounds." Tr. 70. Plaintiff testified she believes she is disabled because she has "problems sitting for a length of time, standing, bending, squatting, reaching over [her] head, drowsiness, falling asleep." Tr. 73. She also testified that her medications affect her, making her feel cloudy and nauseous. Tr. 73. She spends approximately five out of eight waking hours resting or napping around the house. Tr. 75. She cannot lift weights above her head, but she can comfortably lift and walk back and forth with a five pound bag of sugar. Tr. 76. She has nightmares about five out of seven nights. Tr. 76-77. Her mind wanders after about twenty-five minutes. Tr. 77. She cannot handle pressure situations. Tr. 78. On bad days she wakes to leg and back pains, she struggles to walk without a limp, and she will spend most of her time in bed. Tr. 78. This happens about four days a week. Tr. 79. Her back and hip pain is an eight on a one-to-ten scale where one equals a mosquito bite and ten

equals pain requiring hospitalization.  Tr. 79.  On a bad day, her elbow pain will be a seven, and if she is experiencing a headache, which occurs approximately twice a month, it will be a nine.  Tr. 79-80.

The ALJ summarized Plaintiff's testimony, Tr. 30, but ultimately found that, while "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms[,] . . . the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible, because they are not supported by objective medical evidence." Tr. 33.  In support, the ALJ described the objective evidence previously discussed in this opinion—including, particularly, Dr. Dawson's records showing that Plaintiff's spinal cord stimulator was generally successful in ameliorating Plaintiff's pain—in conjunction with Plaintiff's claim that the ALJ's RFC is not supported by substantial evidence, as well as Plaintiff's testimony about her daily activities and abilities.  Tr. 33.  Ultimately, the ALJ determined that this evidence at least "allows a reasonable inference that the claimant's symptoms are not as severe as previously alleged." Tr. 33.

This court must uphold the ALJ's credibility determination if it is supported by substantial evidence.  *See Wilson v. Barnhart*, 284 F.3d 1219, 1246 (11th Cir. 2002) ("If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so.").  As Plaintiff observes, "the ALJ paired his credibility and RFC evaluations." Pl.'s Br. (Doc. 13) at 13.  Thus, Plaintiff's claim that the ALJ failed to

19

properly consider the entire record while evaluating her credibility is essentially identical to her claim that the ALJ's RFC finding is not supported by substantial evidence.  *See* Pl.'s Br. (Doc. 13) at 13 ("As detailed in arguments "*I and II*" above, Ms. Thomas' statements regarding her physical and psychological symptoms are supported by [the records of Dr. Dawson, Dr. Johnston, and Ms. Wulff].").  However, for the reasons stated above with respect to Plaintiff's claim about the ALJ's RFC determination, the undersigned finds that, even if some objective medical evidence arguably supports some of Plaintiff's complaints of disabling pain, there is substantial evidence in the record which supports the ALJ's determination that Plaintiff is not so functionally limited by pain that she is disabled, and the ALJ therefore did not improperly characterize or otherwise ignore the evidence in the record.  *See, supra,* § V.A, pgs. 7-9, 11-12.  As such, the ALJ did not reversibly err in his credibility determination.

## VI.   CONCLUSION

The court has carefully and independently reviewed the record and concludes that, for the reasons given above, the decision of the Commissioner is AFFIRMED.  A separate judgment will issue.

Done this 6th day of October, 2015.

/s/ Wallace Capel, Jr.
UNITED STATES MAGISTRATE JUDGE